173 Cal.App.3d 889 (1985)
219 Cal. Rptr. 337
In re the Marriage of CAROL and BRUCE F. WOLFE.
CAROL WOLFE, Respondent,
v.
BRUCE F. WOLFE, Appellant.
Docket No. A025356.
Court of Appeals of California, First District, Division Five.
October 29, 1985.
*890 COUNSEL
Bernard N. Wolf, Dowgialo & Wolf, Lawrence W. Thorpe and Thorpe & Loynd for Appellant.
*891 Terence F. Colyer, Mary Halbert-Brown and Camera & Colyer for Respondent.
[Opinion certified for partial publication.[*]]
OPINION
KING, J.
In this case we hold that where a marital dissolution judgment determining most issues has become final and provides that each party is to bear his or her own attorney fees and costs to date, but bifurcates for later determination an unadjudicated issue, the court as to the bifurcated issue, after the determination of that issue, may award attorney fees and costs rendered since the date of the prior judgment after due consideration of the income and needs of the parties.
Bruce Wolfe appeals from a postjudgment order requiring him to pay $14,000 in attorney fees incurred by his former wife, Carol Wolfe, in connection with a previous postjudgment proceeding. We affirm the order.

I.
A judgment dissolving the marital status of the parties was entered in May 1981, bifurcating and reserving for later determination the issues of property division, spousal and child support, custody and visitation, and attorney fees.
On October 1, 1982, following a nine-day trial, the court rendered a judgment dividing the community property and setting the amount of spousal and child support pursuant to the stipulation of the parties. The judgment provided that each party would bear his or her own attorney fees and costs through June 2, 1982 (the last day of trial), and also stated, "Each party shall have the right to request attorney fees in accordance with applicable California law." Presumably the latter statement referred to attorney fees incurred for services rendered after June 2, 1982.
Following the 1982 judgment, the parties litigated and then mediated the custody and visitation issues. Initially Carol sought sole custody and Bruce sought joint custody, but on July 12, 1983, the parties filed a stipulated judgment granting joint custody and reciting in considerable detail the parties' various custody and visitation rights. The judgment said nothing about attorney fees.
Concurrent with the execution of the 1983 stipulated judgment, Bruce moved for a reduction of his spousal and child support obligations. Carol *892 filed a countermotion seeking an increase in the support obligations. She also requested an award of her attorney fees incurred after November 22, 1982 (the date she obtained new counsel), in connection with resolution of the custody and visitation issues. At the hearing on these motions the court bifurcated, for resolution after a subsequent hearing, the issues as to who should pay Carol's attorney fees based upon Bruce's contention that she had taken an unreasonable settlement position with regard to custody and visitation. The bifurcation did not encompass the reasonableness of the amount of the fees. Bruce requested a statement of decision.
The court rendered a written "tentative decision," which the court also characterized as its statement of decision, on November 14, 1983. Among other things the decision reduced Bruce's child support payments, relieved Bruce of the obligation to carry a life insurance policy, and denied both parties' requests for modification of spousal support. With regard to the attorney fees issue the decision stated, "Wife has reasonably incurred $14,000 in attorneys' fees since November, 1982 through October, 1983, a substantial portion thereof relating to the mediation-custody proceedings. Allocation/responsibility for payment thereof is deferred to hearing thereon set for 3:00 o'clock p.m., November 17, 1983."
At the outset of the attorney fees hearing on November 17, 1983, the parties agreed to accept the court's "tentative decision" as a judgment (with a minor change in the child support provision). The parties then argued the issue whether Carol had taken an unreasonable settlement position with regard to the custody and visitation issues. Bruce did not request a statement of decision.
The court rendered a minute order on November 21, 1983, ordering Bruce to pay Carol's attorney fees as requested. The order stated in pertinent part, "It appearing that the bulk of Petitioner's fees were incurred re mediation of custody/visitation ...; that Petitioner is not and Respondent is, able to pay Petitioner's fees and costs; ... The Court Orders Respondent to pay fees and costs of Petitioner...."
Bruce filed a timely notice of appeal from the minute order of November 21, 1983.

II.
(1a) Bruce contends that Carol did not make a sufficient showing of necessity for the fee award under Civil Code section 4370, which authorizes courts to award "reasonably necessary" postjudgment attorney fees. He *893 concedes his ability to pay, but argues there was insufficient evidence that Carol had a need for the award.
(2) The applicable rule is that, in exercising its discretion to award attorney fees under Civil Code section 4370, the trial court must consider the respective incomes and needs of the parties. (In re Marriage of Popenhager (1979) 99 Cal. App.3d 514, 525 [160 Cal. Rptr. 379]; In re Marriage of Gonzales (1975) 51 Cal. App.3d 340, 344 [124 Cal. Rptr. 278].)
(1b) Bruce relies on a statement in In re Marriage of Mulhern (1973) 29 Cal. App.3d 988, 995-996, that some further showing is required for an award of attorney fees after dissolution and division of the community assets. This statement of the law is incorrect. It is expressly based on the former statutory rule giving the husband sole management and control of community property. The Mulhern court said that fee awards may be necessary before dissolution because the husband's sole management and control puts the wife in a disadvantageous position, but that because dissolution places the parties in economic parity there will be no need for an award of postdissolution fees absent a change in circumstances which revives the previous lack of parity. (Ibid.) This reasoning is completely undermined by the adoption of the rule of equal management and control in 1975 (Civ. Code, § 5105) without any change to Civil Code section 4370, which demonstrates that the wife's lack of management and control was not the basis for pre-1975 fee awards. Moreover, the reasoning in Mulhern is intrinsically flawed in that it creates a nearly insurmountable nonstatutory requirement  change of economic circumstances after dissolution  which is wholly inconsistent with the statutory authorization for postjudgment awards.
This aspect of Mulhern has not been adopted in any subsequent appellate decisions. Even the court that decided Mulhern later cited that case solely for the proposition that "[t]he trial court must consider the respective incomes and needs of the husband and wife." (In re Marriage of Janssen (1975) 48 Cal. App.3d 425, 428 [121 Cal. Rptr. 701].) (The author of the Mulhern opinion dissented in Janssen, reiterating his position in Mulhern.) We expressly reject this point in Mulhern, as did the opinion in Janssen impliedly. The sole "necessity" consideration in postjudgment proceedings, as with proceedings through judgment, is the respective incomes and needs of the parties.
The reasoning in Mulhern is further flawed in light of contemporary family law trial practice. The bifurcation of issues in family law cases today is very common, while it was rare in 1973 when Mulhern was decided. To the extent bifurcation of issues such as custody, support or the division of community property can assist the parties to achieve settlement of remaining *894 issues, it should be encouraged. The resolution of disputed issues by the parties themselves is always to be preferred over judicial resolution because it is more satisfactory to the parties and it results in an economy of litigation. (3) "All issues incident to marital termination need not be tried in a single family law proceeding. The court may, on proper motion or at the request of the pretrial judge, order the trial bifurcated, allowing early disposition of the dissolution issue and subsequent litigation of the property, support and custody issues (or any other combination of issues and trials). [Marriage of Fink (1976) 54 C.A.3d 357, 126 C.R. 626; Marriage of Van Sickle (1977) 68 C.A.3d 728, 137 C.R. 568; and see CC § 4800(a), authorizing division of property after entry of judgment of dissolution where court expressly reserves jurisdiction; CC § 4514(e), authorizing reservation of jurisdiction over date of termination of marital status.]" (Hogoboom & King, Cal. Practice Guide: Family Law (TRG 1985) § 8:203, italics in original.)
(1c) The most frequent use of bifurcation is to terminate marital status at an earlier time than contested issues can be tried. However, its most beneficial use is to help the parties by resolving a pivotal issue which has to be tried, with the expectation the parties will then be able to resolve all remaining disputed issues by agreement. For example, it is not uncommon for a case to have a pivotal issue in dispute such as the date of separation or the valuation of goodwill or some other complex property interest. "Parties may also find bifurcation useful in order to reach resolution on a particular matter, such as the effect of a separate property agreement, that simplifies or determines other issues. It may also be used to conduct an early trial to determine the community or separate character of an asset or whether a particular asset should be sold immediately." (Markey, 3 Cal. Family Law Practice and Procedure (Matthew Bender) § 47.05[3][a], p. 47-14, fn. omitted.) The inability to resolve such issues frequently inhibits the ability of the parties to settle other issues. If it appears that the resolution of a pivotal issue by a bifurcated trial of that issue will enable the parties to settle all other issues, bifurcation is to be encouraged.
(4) In a family law case bifurcation can have more than one meaning. "Bifurcation can mean only one trial, or it can mean two or more separate trials. When only one trial is required, it is continuous in nature, but segmented as to particular issues. When bifurcation of issues requires two or more separate trials, particular issues are tried at separate times, with each subject to a separate and distinct judgment." (Cal. Marital Dissolution Practice (Cont.Ed.Bar 1981) § 19.18.)
(1d) The Legislature, in addition to the previously mentioned statutory changes since the Mulhern decision, has recognized the benefits of bifurcation *895 and has provided for bifurcated trials on the issues of custody of children and child support. (See Civ. Code, §§ 4600.6, 4707.)
Under the applicable approach Carol presented sufficient evidence of a need for the award. In an income and expense declaration accompanying the request for attorney fees she listed her sole monthly income as spousal and child support payments, and listed an identical amount of total monthly expenses. Bruce argues that the declaration showed significant assets, but those assets (cash, checking accounts, savings accounts, and credit union accounts) were more than offset by the debts listed in the declaration. Bruce also argues that Carol was to receive a large income tax refund, but Carol testified that her receipt of the refund was in doubt because her tax return was likely to be audited. (Bruce, in contrast, filed an income and expense declaration showing a substantial gross monthly income.) The evidence was more than sufficient to demonstrate that Carol had a need for the award.

III.-V.[*]
.... .... .... .... .... .... .

VI.
The order is affirmed. The amount of appellate attorney fees to be awarded Carol, if appropriate, shall be determined by the trial court upon the filing of a cost bill.
Low, P.J., and Haning, J., concurred.
NOTES
[*] Parts III, IV and V are not published because they do not meet the standards for publication contained in California Rules of Court, rule 976(b).
[*] See footnote, ante, page 889.