403 S.E.2d 22

**Josephine J. HOLST**

v.

**Hon. A. Andrew MacQUEEN, et al.**

**No. 19911.**

Supreme Court of Appeals of West Virginia.

March 15, 1991.

Alfred B. McCuskey, II, St. Albans, for Josephine J. Holst.

Robin L. Godfrey, Charleston, for Henry A. Holst.

NEELY, Justice:

On 12 May 1988, Henry Holst filed for divorce in the Circuit Court of Kanawha County. Over the next two years seven hearings were conducted before the family law master and finally, in June 1990, at the eighth hearing, Mr. Holst requested that the law master bifurcate the proceedings so that he could be granted a divorce. The motion was then renewed before Judge Andrew MacQueen on 19 June 1990, but Judge MacQueen denied the motion at that time and set the matter down for final hearing in circuit court.

The petitioner, Josephine Holst, then caused the trial to be postponed twice, and finally on 20 August 1990—the third trial date—Mr. Holst again requested bifurcation because the case was to be postponed yet again. This time the court granted his motion. The court then granted the parties a divorce and reserved for later disposition all matters having to do with the parties' property. Mrs. Holst then sought a writ of prohibition in this Court.

We issued a rule to show cause because until now we have not addressed the issue of whether a circuit court can bifurcate a divorce proceeding. All of the jurisdictions that we have surveyed, with the notable exceptions of Texas and Nebraska, allow bifurcation under appropriate circumstances, and we conclude that in West Virginia bifurcation is proper when there are compelling reasons to separate the divorce issue from related property issues, and neither party will be prejudiced by the bifurcation. Indeed, bifurcation is particularly appropriate in circumstances where one party interposes delay after de-

lay and virtually grinds the court machinery to a halt.[1]

In August 1989, the parties had reached a complete agreement, which was set forth in the record, and to which petitioner assented item by item with her second counsel present. Thereafter, however, petitioner refused to sign an agreement that incorporated the terms to which the parties had previously agreed, and the circuit court ruled that Mrs. Holst was sufficiently distraught at the time she assented to the terms of the alleged agreement that she should not be bound by it.

The case was then set for pretrial conference before Judge MacQueen for 17 July 1990, but continued by Mrs. Holst, set for trial on 31 July 1990, but continued by Mrs. Holst because of a health problem on the part of her counsel, set for trial 20 August 1990, but continued by Mrs. Holst indefinitely because of her mental health. Notice that a continuance of the 20 August 1990 trial before Judge MacQueen would be requested was given orally to respondent's counsel only on the Friday afternoon before the Monday trial date.[2]

The record in this case demonstrates that Mrs. Holst has consistently resisted bringing this matter on for final hearing, and that respondent and his counsel have been ready for trial on numerous occasions only to be confounded by late motions to continue.

Petitioner, age 54, is not employed. Respondent, age 55, works two consulting jobs at Union Carbide and receives a Carbide pension, netting a total of about $3,400 per month. Respondent has paid petitioner $1,554 per month temporary alimony since July 1989, roughly 47 percent of his net income in 1990. Petitioner continues to be covered by respondent's medical plan and will qualify for medical coverage when the divorce is final. In addition, petitioner lives in the marital home, and all of the other assets, including an individual retirement account and a savings account (both of which were frozen by court order) remain intact. Consequently, in light of the generous temporary relief that has been awarded to her, Mrs. Holst does not even allege in this prohibition proceeding that the bifurcation order has prejudiced her property rights. Rather, she complains only that she should be allowed to have everything decided at once.

I

Although we have never squarely addressed the propriety of bifurcated divorce proceedings, we recognize that the status of divorce is commonly determined before or without an adjudication of property issues, where, for instance, one spouse seeks a divorce from a court that lacks personal jurisdiction over the other spouse.[3]

1. In this case, the counsel who brought this prohibition is Mrs. Holst's third lawyer. The hearing before the law master on 7 June 1990, when the bifurcation motion was first made, was the eighth scheduled hearing in this case, and the hearing on 20 August 1990 at which the bifurcation order was entered was the eleventh hearing in this case.

2. On 4 December 1990 the parties appeared yet again at respondent's instance before the family law master seeking a trial date. At that time, petitioner resisted setting a trial date, because of her continued poor mental health, yet sought more temporary relief. Petitioner was at court, though not present in the room, during the hearing, apparently well enough to do temporary hearings but too ill to do a final hearing.

3. In Harford v. Harford, 176 W.Va. 101, 341 S.E.2d 847 (1986), a wife sued her husband for divorce in West Virginia, but was advised that she could not get a personal judgment against him because of lack of personal service of pro-cess on him in his state of residence, Texas. The husband counterclaimed in West Virginia for divorce on the basis of one year separation, and sought an adjudication of certain property issues. However, at the final divorce hearing, the court specifically stated that property matters would not be addressed in that hearing. The court, upon deciding to grant the husband a divorce, had the husband's counsel prepare an order. The husband's attorney submitted to the court an order that addressed property issues, and the judge signed and entered the order. On appeal, we reversed on the ground that the order was clearly a mistake, because alimony and the division of property issues were not before the court, and no evidence had been taken on those issues.

In Tallman v. Tallman, 183 W.Va. 491, 396 S.E.2d 453 (1990), the lower court granted a divorce on the basis of one year separation and reserved ruling on property questions. The propriety of bifurcation was not raised in that case, and we made no comment on it.

A review of the law in other jurisdictions indicates that bifurcation, however common, is generally disfavored unless there is some specific reason for separating the issues of divorce and property. The reason does not always have to be "compelling," but it is generally recognized that bifurcation should not be done as a matter of course, for no reason at all.[4]

Virginia, under a statutory scheme similar to ours, has permitted bifurcation, even though in Virginia a circuit court ordinarily loses jurisdiction 21 days after entering a final divorce decree. In *Parra v. Parra*, 1 Va.App. 118, 336 S.E.2d 157 (1985), the intermediate Court of Appeals held that granting the divorce while reserving jurisdiction over equitable issues was within the sound discretion of the trial court. Approaching the issue as a question of statu-

tory construction, the court's decision turned on a Virginia statute that gave the circuit court jurisdiction to award equitable distribution "upon decreeing a divorce." The court held that "upon" meant "in consequence of or following," rather than "at the time of." The "upon decreeing a divorce" construed by the *Parra* Court is essentially the same formula used in *W. Va. Code*, 48–2–15 [1990] (regarding alimony) and *W. Va. Code*, 48–2–32 [1984] (regarding equitable distribution).[5]

We find the *Parra* court's holding that "upon decreeing a divorce" sets the earliest time for granting equitable distribution and does not prohibit the circuit court from reserving jurisdiction over property issues, to be eminently reasonable.[6]

In the case before us, it is obvious that Mrs. Holst has suffered enormously

4. For instance, in *Wolk v. Wolk*, 318 Pa.Super. 311, 464 A.2d 1359 (1983), the court held that trial courts could, in their discretion, bifurcate divorce proceedings, but that the courts could not bifurcate without some determination that bifurcating would be more beneficial than not bifurcating. The Pennsylvania Court recognized that statutory law explicitly permitted bifurcation, but held that bifurcation could not simply be ordered as a matter of course. The Court noted that one of the disadvantages of bifurcation is the delayed resolution of economic issues, and the dilatory effect of delay on the parties' efforts to reshape their lives.

5. *W. Va. Code*, 48–2–15(a) [1990] states:
*Upon ordering a divorce or granting a decree* of separate maintenance, the court may require either party to pay alimony in the form of periodic installments, or a lump sum, or both, for the maintenance of the other party. Payments of alimony and child support are to be ordinarily made from a party's employment income and other recurring earnings, but in cases where the employment income and other recurring earnings are not sufficient to adequately provide for payments of alimony and child support, the court may, upon specific findings set forth in the order, order the party required to make such payments to make the same from the corpus of his or her separate estate. An award of such relief shall not be disproportionate to a party's ability to pay as disclosed by the evidence before the court. [Emphasis added.]
*W. Va. Code*, 48–2–32(a) [1984] states:
Except as otherwise provided in this section, *upon every judgment* of annulment, divorce or separation, the court shall divide the marital property of the parties equally between the parties. [Emphasis added.]

6. In *Zipf v. Zipf*, 8 Va.App. 387, 382 S.E.2d 263 (Va.App.1989), a circuit court adjudicated a divorce in a manner that could only be called piecemeal. In 1985, a circuit court entered a "final" decree of divorce on the ground of one year separation, but reserved the issues of spousal support and maintenance and equitable distribution for later adjudication. In 1986, the circuit court adjudicated the equitable distribution issue, preserving the parties' right to appeal its decision on that issue, and reserving jurisdiction over spousal support and maintenance. In 1987, the court entered a truly final decree. The wife then appealed, and the husband responded that she was barred from raising issues that were decided a year before, because she had not appealed at that time. The Court of Appeals disagreed, and held that, as the 1986 order had not purported to decide all the issues, and the 1987 order included by reference the provisions of the 1986 order, the last decree was the final, appealable order.

Perhaps because of such piecemeal handling of divorces, the Virginia legislature in 1986 amended the statute applied by the *Parra* Court, to limit severely the circumstances under which a divorce proceeding may be bifurcated. Va. Code Ann. § 20–107.3 [1990] now contains a provision stating:
The court, on the motion of *both* parties, may retain jurisdiction in the final decree of divorce to adjudicate the remedy provided by this section when the court determines that such action is *clearly necessary* because of the complexities of the parties' property interests, and all decrees heretofore entered retaining such jurisdiction are validated.
The amended statute was applied in *Clark v. Clark*, 398 S.E.2d 82 (1990).

from the dissolution of her marriage, and there is evidence that the trauma of the divorce has caused her mental health to deteriorate to the point where undergoing the strain of a divorce hearing might further impair her well-being. Nonetheless, our law entitles Mr. Holst to a divorce upon one year's separation, and at some point he must receive a divorce decree so that he may go on with his life.[7] In *In re Marriage of Wolfe*, 173 Cal.App.3d 889, 219 Cal.Rptr. 337 (1985), a California appellate court cited two uses for bifurcation:

> The most frequent use of bifurcation is to terminate marital status at an earlier time than contested issues can be tried. However, its most beneficial use is to help the parties by resolving a pivotal issue which has to be tried, with the expectation the parties will then be able to resolve all remaining disputed issues by agreement.

*Id.*, at 894, 219 Cal.Rptr. at 340. The case before us fits into the former category. The contested issues cannot yet be tried, because Mrs. Holst is not yet mentally ready to have them tried.

A common concern among courts that have addressed the issue of bifurcation is *delay*. In *Fiorella v. Fiorella*, 132 A.D.2d 643, 518 N.Y.S.2d 17 (1987), a trial court's bifurcation of a divorce proceeding was held to be unjustified. In that case, the husband resisted disclosure of his financial position, and stated that his financial situa-tion was complex. The appeals court felt that bifurcation could lead to further delay:

> Once a judgement on the merits is obtained, the defendant may seek to further stall the resolution of the financial issues. Moreover, in view of the defendant's admission that his financial situation is complex, a bifurcation of the issues will, in all likelihood, lead to two protracted trials instead of one.

518 N.Y.S.2d at 18–19.

On the other hand, in *Leese v. Leese*, 369 Pa.Super. 104, 534 A.2d 1101 (1987), the young wife of an elderly man challenged bifurcation because she wanted to delay a divorce decree. She believed that by delaying the divorce decree, she would benefit financially, by acquiring a greater interest in real estate held by the entireties if her husband died before the divorce decree was entered. The Court felt that the wife's desire to enhance her rights in marital property did not justify a denial of bifurcation, and said:

> Bifurcation will permit the parties to get on with their lives without holding the personal life of an 84 year old husband hostage to the economic claims of a younger, undivorced wife.

*Id.*, at 108, 534 A.2d at 1103.

Whether Mrs. Holst has delayed a final decree for financial gain matters not, because the practical effect of her conduct or condition has been to hold Mr. Holst hostage. Bifurcation alleviates the harm caused to Mr. Holst by delay, without prejudicing the property rights of Mrs. Holst.[8]

**7.** In *In re Marriage of Hermsen*, 27 Wash.App. 318, 617 P.2d 462 (1980), the Court of Appeals of Washington upheld a trial court's decision to bifurcate. The wife did not challenge the no-fault ground for divorce, yet challenged the trial court's granting of the divorce before deciding property issues. The Court of Appeals noted Washington's no-fault law, and held that, "[t]he State no longer has an interest in preserving unworkable marriages; it now has an interest in their prompt termination." 617 P.2d at 465. The Court demonstrated an overriding concern with delay, going so far as to warn that sanctions would be awarded against litigants and counsel who, frivolously and solely for the purpose of delay, appealed a decision to bifurcate divorce proceedings.

In *Gionis v. Superior Court*, 202 Cal.App.3d 786, 248 Cal.Rptr. 741 (1988), the court held that only slight evidence was necessary to obtain bifurcation and resolution of marital status, and that the spouse *opposing* bifurcation had to present *compelling reasons for denial.*

**8.** Nebraska and Texas have expressly disapproved of the practice of bifurcating divorce proceedings. *See, Adam v. Stewart*, 552 S.W.2d 536 (Tex.Civ.App.1977), in which the court manifested a concern that bifurcation caused protracted litigation, and *Humphrey v. Humphrey*, 215 Neb. 664, 340 N.W.2d 381 (1983), where the court was disturbed that bifurcation could leave a "divorced" couple confined to a property relationship.

We share those courts' concern with protracted litigation and uncomfortable property relationships. That is why we hold that bifurcation should only be employed for compelling reasons. Preventing harm to one spouse by protracted delay on the part of the other spouse is a

■ Mrs. Holst wants a divorce based on the fault ground of adultery, apparently fearing that a no-fault divorce will mean a less favorable property settlement for her than a fault-based divorce. We find her concern to be unjustified. Mrs. Holst may, at the hearing on property issues, introduce any evidence of adultery that she could have introduced in a proceeding to terminate the marriage on the ground of adultery, and the trial court may make the same property award that it would have made if the divorce had been granted on the ground of adultery. *W. Va. Code*, 48–2–15(i) [1990].

Accordingly, for the reasons set forth above, the writ of prohibition for which petitioner prays is denied and the rule to show cause heretofore granted is discharged.

Writ denied.

compelling reason to bifurcate. If bifurcating would substantially prejudice Ms. Holst's rights,

we would not approve of it.