452 S.E.2d 401

**Susan Britt ZANKE, Plaintiff Below, Appellant,**

v.

**Ronald F. ZANKE, Defendant Below, Appellee.**

No. 22092.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 1994.

Decided Dec. 8, 1994.

Jay T. McCamic, McCamic & McCamic, Wheeling, for appellant.

David J. Sims, Yahn & Sims, Wheeling, for appellee.

PER CURIAM:

This is an appeal of a June 15, 1993, order of the Circuit Court of Ohio County denying the motion of Appellant Susan Britt Zanke for the transfer of the right, title, and interest of the Appellee, Ronald Zanke, to an annuity. The Appellant requested the right to this annuity as partial payment of alimony owed to her by the Appellee. The Appellant requests that this Court either order the transfer of the right to the annuity or order the establishment of an escrow account for the proceeds of the annuity. We reverse the decision of the lower court with regard to lack of jurisdiction and remand for additional consideration.

## I.

The parties were married in 1972 and divorced in 1976. Although the Appellee apparently did not pay the court-ordered alimony of $130 per month, the Appellant sought no arrearage until 1988. Subsequent to a determination of accrued alimony by the lower court, this Court determined that alimony had been incorrectly calculated and remanded the matter for additional consideration and correction of the error. *Zanke v. Zanke*, 185 W.Va. 1, 404 S.E.2d 92 (1991). Upon remand, the lower court, by order entered March 15, 1993, determined that the Appellee owed the Appellant $36,576.33 in accrued alimony. No payments have been made by the Appellee.[1]

The Appellee is the beneficiary of an Allstate annuity which becomes payable on September 6, 1996, in the amount of $20,434.46.[2] In response to the Appellant's attempts to establish a lien on the annuity in her behalf, Allstate has refused to recognize any interest she may have, explaining that the Appellee does not technically own the annuity since it does not vest until September 6, 1996. Moreover, Allstate contended that in order to qualify for preferential tax treatment under section 130 of the Internal Revenue Code, a settlement annuity contract must protect the rights of the annuitant to the payments.[3]

The Appellant contends, however, that the proceeds of the annuity would be quickly dissipated if the Appellee were to receive them.[4] She maintains that she is entitled to receive the $20,434.46, as it becomes payable on September 6, 1996, as partial payment of the outstanding alimony.

The lower court did not address the substance of the Appellant's claims and denied her motion based upon its conception of the authority conferred upon it by West Virginia Code § 48-2-15(a) (Supp.1994). The lower court deemed itself prohibited under the

1. The Appellant alleges that the Appellee has various debts, IRS tax liens, and minimal income.

2. This annuity was the result of a structured settlement agreement in an unrelated personal injury claim by the Appellee against Allstate Insurance Company. The annuity was issued to Allstate on June 12, 1987.

3. Allstate also maintained that conferring rights to the annuity to the Appellant would create adverse tax consequences. In an affidavit by Kenneth Leone, an actuary from Allstate Life Insurance Company, the affiant explained that the annuity is not currently owned by the Appellee and therefore his rights to the annuity may not be transferred.

4. The Appellant contends that due to the acrimonious nature of the divorce, the Appellee would probably choose not to honor the lower court's order regarding payment of alimony to the Appellant when he receives the annuity amount. Additionally, the Appellant fears that the Appellee's creditors may effectuate a lien on the annuity before the lower court could force the Appellee to pay the accrued alimony from the proceeds of the annuity.

mandates of that statute from addressing the issues raised by the Appellant. West Virginia Code § 48–2–15(a) provides as follows:

Upon ordering a divorce or granting a decree of separate maintenance, the court may require either party to pay alimony in the form of periodic installments, or a lump sum, or both, for the maintenance of the other party. Payments of alimony are to be ordinarily made from a party's income, but when the income is not sufficient to adequately provide for those payments, the court may, upon specific findings set forth in the order, order the party required to make those payments to make them from the corpus of his or her separate estate. An award of alimony shall not be disproportionate to a party's ability to pay as disclosed by the evidence before the court.

The lower court apparently determined that the statute, by stating "[u]pon ordering a divorce," provided the court with the authority to order payment from the corpus of the separate estate *only* as a part of the initial divorce decree. Because this matter was raised several years after the original divorce, the lower court concluded that the statute did not authorize such action. The lower court did not, however, address the merits of the Appellant's claim.[5]

## II.

■ The specific authority granted by West Virginia Code § 48–2–15 was evaluated by this Court in *Holst v. MacQueen,* 184 W.Va. 620, 403 S.E.2d 22 (1991). In *Holst,* the proper interpretation of the introductory phrase "[u]pon ordering a divorce" was addressed. 184 W.Va. at 623, 403 S.E.2d at 25. Applying the reasoning of the Virginia Court in *Parra v. Parra,* 1 Va.App. 118, 336 S.E.2d 157 (1985), we determined in *Holst* that the language in question did not limit the jurisdiction of the court to the time of the initial

divorce decree. 184 W.Va. at 623, 403 S.E.2d at 25.[6] We explained that the *Parra* court found that " 'upon' meant 'in consequence of or following,' rather than 'at the time of.' " *Id.* Thus, we concluded in *Holst* that the language of the statute did not prohibit the lower court from reserving jurisdiction over property issues, to be eminently reasonable. 184 W.Va. at 623, 403 S.E.2d at 25.

■ We have also consistently held that a lower court retains continuing jurisdiction over divorce matters entrusted to it. *Ravitz v. Fox,* 166 W.Va. 194, 196, 273 S.E.2d 370, 372 (1980). In syllabus point 1 of *Ravitz,* we explained the following:

Once the circuit court's jurisdiction of the person attaches in a divorce action, jurisdiction continues throughout all subsequent proceedings which arise out of the original cause of action, including matters relating to alimony, child support, and custody, and a party may not avoid the continuing jurisdiction of the trial court to modify orders concerning alimony, child support, and custody by moving outside the geographical jurisdiction of this State.

*Id.* at 195, 273 S.E.2d at 371.

■ Having misinterpreted the language of West Virginia Code § 48–2–15(a), the lower court disavailed itself of the opportunity to address the merits of the Appellant's claim and to create a record upon which to base its determination. The Appellant requests this Court to order the transfer of the Appellee's right, title, and interest in the annuity to the Appellant, contending that such transfer is the only mechanism through which she could receive partial payment of the alimony to which she is entitled. However, it would be inappropriate for this Court to resolve this ultimate issue at this juncture since the lower court, due to a misunderstanding of its authority, may neither have fully developed the factual issues, nor resolved the outstanding

---

5. The lower court's order states only that "West Virginia Code § 48–2–15 does not grant the Court authority under the circumstances presented in the above styled matter to transfer ownership of the annuity in question."

6. However, the Virginia General Assembly amended the Virginia statute after the *Parra* decision to impose specific limitations upon a court

when bifurcating the divorce issues and addressing equitable distribution matters subsequent to the original divorce decree. *See Erickson–Dickson v. Erickson–Dickson,* 12 Va.App. 381, 386, 404 S.E.2d 388, 391 (1991). That amendment obviously does not alter our rationale in this case.

legal issues relating to this matter. Whether the lower court determines that the Appellant has a legal interest in the annuity or declines to order such interest, its decision cannot be based upon lack of jurisdictional authority. We therefore remand this matter to the lower court for the taking of evidence, if any additional evidence need be taken, and for the resolution of the legal issues raised in the Appellant's motion.[7]

Reversed and remanded.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

---

**7.** By so ruling, we intend no limitation of the lower court's discretion in determining whether transfer of an annuity of this nature is appropriate and whether such transfer, if generally appropriate, is justified in this matter. We simply hold that the authority of the lower court to address such matters is not in any manner limited by West Virginia Code § 48–2–15(a). The factual issues which may require additional consideration by the lower court include the future vesting of the annuity to which the Appellant requests interest, the tax consequence issue raised by Allstate, and the plausibility of ordering that proceeds of the annuity, when received, be paid directly to the Appellant.