Filed 5/16/13  Marriage of Roney CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of SONIA and STEPHEN RONEY. _____ SONIA RONEY,       Respondent,       v. STEPHEN RONEY,       Appellant. | B233870 (Los Angeles County Super. Ct. No. BD443374) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Frederick Shaller, Judge.  Affirmed.

Stephen Roney, in pro. per., for Appellant.

Rombro & Associates, S. Roger Rombro and Melinda A. Manley for Respondent.

_____

In this marital dissolution action, Stephen Roney (Husband), acting in propria persona, appeals from the judgment on reserved issues entered after the dissolution of his marriage to Sonia Necochea Roney (Wife). Husband challenges the court's characterization of four parcels of real property that he claimed to have owned before the date of marriage or acquired with his separate property during the marriage. Husband's principal contention on appeal is that but for rulings denying his request for a trial continuance and excluding recently discovered checking account registers, which he maintained Wife had withheld during discovery, he would have been able to establish through direct tracing that the four parcels of real property were his separate property.[1] We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Husband is a certified public accountant and was licensed to practice from 1972 to approximately 2001. Husband and Wife married on December 28, 1988. Wife petitioned for dissolution of their marriage on April 3, 2006. Judgment of dissolution was entered on March 1, 2010, as to status only with jurisdiction reserved over all other issues. In phase one of the trial on reserved issues, the trial court determined the date of separation was March 30, 2006. The second phase of the trial on reserved issues addressed the characterization of property.

1. *The Properties*

Before marriage, Husband owned four properties: (1) a shopping center referred to as "Imperial King Center" (IKC Property) in Norwalk, (2) a duplex commonly known as 463, 477 25th Street (25th Street Property) in Hermosa Beach, (3) real property commonly known as 2010 Blossom Lane in Redondo Beach (Blossom Lane Property), and (4) real property commonly known as 22 Hermosa Avenue in Hermosa Beach

---

[1] Husband refers throughout his brief to "four pieces" of real property, but he does not further describe the property.

[2] Our recitation of the facts is limited to matters in the record. We disregard facts not supported by record citations and attempts to reargue the facts as Husband would have them. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1531.)

(Hermosa Avenue Property). The mortgages on the IKC Property and the 25th Street Property were paid during the marriage.

Three of these four properties have been sold. The 25th Street Property was sold in 2008, after the date of separation, and the proceeds were held in a trust account. The Blossom Lane Property and the Hermosa Avenue Property were sold during the marriage.

Husband testified that he used the sale proceeds from the Hermosa Avenue Property to buy a Jack in the Box restaurant in Texas (Texas Property). He held title to the Texas Property and testified he paid off the mortgage with his separate property.

Husband and Wife held title as joint tenants to a property commonly referred to as 1129 11th Street in Hermosa Beach (11th Street Property). Husband admitted the 11th Street Property was a community estate asset, with the exception of $102,000 of his separate property that he invested from the sale proceeds of the Blossom Lane Property.

The trial court concluded Husband failed to meet his burden to directly trace his separate property interest in the properties. Based upon the evidence presented at trial, the community estate had a pro-tanto interest in the IKC Property, the 25th Street Property sale proceeds, the Blossom Lane Property, and the Hermosa Avenue Property as stated in *In re Marriage of Moore* (1980) 28 Cal.3d 366, and *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426 (*Moore-Marsden formula*). The trial court characterized the Texas Property and the 11th Street Property as community property, subject to reimbursement pursuant to Family Code section 2640 for Husband's separate property contribution. Husband contends his failure of proof relates to a discovery dispute with Wife over missing checking account registers from his separate bank accounts that he needed to show he used his separate property during the marriage to pay the mortgages on the properties.

2. *Ongoing Discovery Dispute Over Checking Account Registers*

Husband sought to continue the trial on the reserved issues for a number of reasons, including the parties' ongoing discovery dispute over missing checking account registers. Both parties accused the other one of hiding or stealing these documents.[3]

a. *Wife's Request for Production and Motion to Compel*

In March 2008, Wife propounded discovery seeking documents to support Husband's separate property claims to assets acquired before marriage, during marriage, or since separation to which Husband contended were not commingled with community property.

Dissatisfied with Husband's document production, Wife moved to compel. In opposition to the motion, the sworn declaration of Husband's counsel stated: "Respondent delivered to my office, all of the records in his possession related to his financial conditions. These records include, tax returns for 19 years, bank records, rental agreements, loan applications and other documents . . . . I allowed Petitioner, personally, to enter my office and to copy whatever records . . . she chose." Husband's counsel also personally delivered two full boxes of business records in response to the document request.

The motion to compel was granted. The order states that if Husband seeks to augment discovery, he must provide discovery on or before 45 days from the date of trial. If husband augmented discovery, he was ordered to provide a statement under penalty of perjury explaining "why the documents sought to augment his responses were not provided in response" to the document request.

---

[3] Husband has not prepared an adequate record. A party may choose to act as his own attorney. " '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation.] Thus, as is the case with attorneys, pro. per. litigants must follow correct rules of procedure. [Citations.]" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

4

b. *Husband's Request for Production and Motions to Compel*

In February 2010, Husband filed a motion to compel production of documents after propounding a request for missing checking account registers. In December 2009, Husband requested "[h]andwritten check registers that were prepared by Stephen Roney for account numbers 00633-3988 and 00639-05663 also known as Bank of America general account and Bank of America Imperial King Center account for the period of January 1, 1989 through December 31, 2001." Wife eventually responded to the request, stating: "Documents have been produced pursuant to request for production, set number two, and have been supplemented." Husband believed this response was incomplete.

In June 2010, Husband filed a motion to compel and sought an evidentiary sanction precluding Wife from using the Bank of America checking account registers prepared for the period from 1989 through 2001. Husband accused Wife of taking these checking account registers from his locked car while he was out of the country. The record does not contain a ruling on this motion.[4]

c. *Trial Court Order Regarding Undisclosed Checking Account Registers*

The court denied Husband's motion to continue the trial based upon the ongoing discovery dispute but addressed Husband's concern that he believed Wife had withheld the checking account registers. The court's order states: "[I]f Petitioner is calling an expert or party witness who relied upon Respondent's check registers for Mr. Roney's main operating account from 1989 through 1992, bank statements for two Cal Fed bank accounts and bank statements for several bank accounts in Petitioner's name at the time of separation, or any appraisals these documents are to be produced to Respondent in

---

[4]    The commissioner that heard the discovery motion apparently ordered the parties to bring this matter before a discovery referee to determine whether Wife had withheld documents. Husband represents in his opening brief that there was not enough time to hire a discovery referee before trial, but he did not raise this point in his motion to continue the trial. During trial, Husband's counsel also referred to evidentiary sanctions imposed on Wife. The trial court reviewed the file and could not find any sanctions order, nor has Husband presented any such order in the record on appeal.

sufficient time for cross-examination of the expert and of Petitioner or testimony will not be permitted on these matters."

3. *Use of the Checking Account Registers at Trial*

a. *Wife's Motion in Limine to Exclude Undisclosed Documents*

Wife filed a motion in limine to preclude the use of documents not previously disclosed or produced in discovery, including summaries, lists, audits, and other similar compilations that may have been prepared for trial. The motion was based on Husband's statement during a break in a mandatory settlement conference before trial that " '[w]e have found more documents.' " The trial court granted the motion to exclude any compilations "unless foundation is laid prior to testimony."

b. *Wife's Schedules Based on Checking Account Registers*

Husband had a separate bank account, a Bank of America account ending in 5663 (IKC Account), in which he paid the mortgage and expenses related to the IKC Property. Wife had no signing authority on the IKC Account. Husband also had a Bank of America account ending in 3988 (General Account).

Wife testified she prepared a number of schedules for her expert using available bank records. One of these schedules listed income earned in 1994 from a laundry business operated at the IKC Property. Wife testified that she obtained the financial information from the IKC Account check registers that she found in boxes in the living room at the 11th Street Property.[5] Wife also testified that she made a copy of two pages of checking account registers, but she could not identify the account.

c. *Husband's Compilations Based Upon Recently Discovered and Undisclosed Checking Account Registers for the IKC and General Accounts*

Husband prepared compilations using checking account registers that had not been produced. He found them about three weeks before trial in a box of records at the 11th

---

[5] Husband's brief cites to testimony and then improperly attempts to refute that testimony. For example, in response to this testimony, Husband states: "This is a lie because she actually found them in the BMW car that was locked up in the garage at 1129 11th Street." As noted, we do not consider matters outside the record.

6

Street Property.  The missing checking account registers are for the period from 1993 to 2000 for the General Account, and from 1991 to 2000 for the IKC Account.  The compilations were for the 1993 General Account (Exhibit 414), and for the IKC Account from 1991 through 1995 (Exhibits 415, 416).  Husband did not find all of the missing checking account registers.

During argument following an objection to the admission of these compilations, Husband attempted to persuade the court that Wife had withheld the checking account registers during discovery.  To support his position, Husband pointed to Wife's admission into evidence of the two-page copy of checking account registers.  He told the court that the first page was a copy of the 1991-1992 registers from the General Account, which were still missing.  Husband believed that this showed Wife had access to all the checking account registers.

Husband's compilations (Exhibits 414, 415, and 416) were excluded from evidence.  The trial court noted that upon discovery of the checking account registers, Husband should have copied the documents and delivered them to Wife before trial, offered to pay the damages caused by the delay in production, and moved for a continuance.  Instead, Husband waited until the fifth day of trial to disclose these documents when Wife almost had completed her case.

Thereafter, Husband traced his separate property with numerous schedules that he prepared using receipts and disbursements from the IKC Account and General Account.

d.  *Statement of Decision, Judgment, and Appeal*

Citing *Pate v. Channel Lumber Co.* (1997) 51 Cal.App.4th 1447 in its statement of decision, the trial court rejected Husband's position that he had been unfairly prejudiced by the exclusion of his compilations (Exhibits 414-416) prepared using the checking account registers.  The court noted that Husband's assertion as to what the lost evidence would show, if found, or who was responsible for the loss was "pure speculation."

The court also concluded Husband's schedules were untrustworthy.  They were created from guesswork and not supported by verifiable source documents.

7

As for Husband's contention that Wife withheld documents, the statement of decision reads: "Although Mr. Roney tried to blame Petitioner for the misappropriation and unavailability of records necessary to prove his case, he proved nothing more than that Mrs. Roney had the opportunity to take some of the records that Mr. Roney left in an unsecured common area in the parties' home – not that she took or destroyed them. Mr. Roney is a certified public accountant with specialized knowledge regarding how to set up accounts, keep records, and maintain records."

The court awarded Wife $385,502 in attorney fees and costs, stating "much of the conduct mentioned in the Statement of Decision which gave rise to the protracted litigation indicates that respondent violated Family Code section 271 by his litigation conduct."

Husband timely appealed from the judgment entered following the second phase of the court trial on reserved issues (second partial judgment).

## DISCUSSION

1. *Appellate Jurisdiction and Request to Dismiss the Appeal*

As a preliminary matter, we address whether we have jurisdiction to hear this appeal, and whether the appeal should be dismissed pursuant to the disentitlement doctrine or because Husband has failed to follow appellate rules and procedures. We have jurisdiction to hear the appeal, and deny the request for dismissal.

a. *Appealability*

Appealability of the second partial judgment " 'goes to our jurisdiction, [leaving us] dutybound to consider it on our own motion' [Citation.] . . . ." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1216.) Although there is no dispute as to appealability, jurisdiction cannot be conferred. (*Ibid.*)

The parties view the second partial judgment as an exception to the one final judgment rule. The "final judgment rule" applies to civil cases and provides that unresolved issues prevent a judgment from being final for purposes of appellate review. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697.) Under the final

8

judgment rule, an appeal lies only from a final judgment, one that effectively terminates the litigation.  (*Ibid*.)

The one final judgment rule does not always apply in family law cases because of the practice of bifurcating issues for separate trials.  " 'All issues incident to marital termination need not be tried in a single family law proceeding.  The court may . . . order the trial *bifurcated*, allowing early disposition of the dissolution issue and subsequent litigation of the property, support and custody issues (or any other combination of issues and trials).  [Citations.]' "  (*In re Marriage of Wolfe* (1985) 173 Cal.App.3d 889, 894; see also Cal. Rules of Court, rule 5.390.)  When the trial court bifurcates the issue of the dissolution of the status of marriage and reserves jurisdiction over the other issues, the judgment of dissolution is immediately appealable.  (*In re Marriage of Fink* (1976) 54 Cal.App.3d 357, 360-366.)

Post-judgment orders affecting the judgment in some way or relating to its enforcement that involve issues other than those decided by the judgment, are appealable under Code of Civil Procedure section 904.1, subdivision (a)(2).  (*In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 497; see Hogoboom and King, Cal. Practice Guide: Family Law (The Rutter Group 2012) ¶ 16:274, p. 16–83.)

The second partial judgment was entered following the judgment of dissolution, but in order to be appealable it must be final, that is, not simply preliminary to a proceeding and judgment.  (*In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, 403.)  Unlike the post-judgment order at issue in *In re Marriage of Ellis*, in which the court's order was merely preliminary to an anticipated final order evaluating and dividing the asset, here the trial court made a final determination on the real property division.  Our only concern relates to language in the second partial judgment addressing the reserved issues.  The second partial judgment states with respect to the IKC Property, the proceeds from the 25th Street Property, and the Texas Property: "Jurisdiction is expressly reserved over this property and any rents, income and profits that were not distributed proportionally to the parties to effect the Court's division."  We read this language as a

9

final determination on the characterization of the subject properties, and a reservation of jurisdiction to enforce the court's order. Thus, the second partial judgment is appealable.

   b. *Disentitlement Doctrine and Violation of Appellate Rules and Procedures*

Wife seeks a dismissal of this appeal pursuant to the disentitlement doctrine, or alternatively, dismissal for numerous violations of appellate rules and procedures. Husband's litigation conduct does not warrant the sanction of dismissal.

Under the disentitlement doctrine, "[a] reviewing court has inherent power to dismiss an appeal when the appealing party has refused to comply with the orders of the trial court. [Citation.]" (*In re Z.K.* (2011) 201 Cal.App.4th 51, 63.) The doctrine "extends to conduct that . . . frustrates the ability of another party to obtain information it needs to protect its own legal rights." (*In re C.C.* (2003) 111 Cal.App.4th 76, 85.) "Appellate disentitlement 'is not a jurisdictional doctrine, but a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction.' [Citation.]" (*In re Z.K.*, *supra*, at p. 63.) The rule applies even if there is no formal adjudication of contempt. (*TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377, 379.) The disentitlement doctrine "is particularly likely to be invoked where the appeal arises out of the very order (or orders) the party has disobeyed." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2012) ¶ 2:340, p. 2-172 (rev. #1, 2012).)

Wife contends dismissal of the appeal under the disentitlement doctrine is an appropriate sanction because Husband violated a court order by waiting until trial to disclose his discovery of the missing checking account registers. Wife also points out that Husband has violated other court orders in this proceeding, requiring her to initiate contempt proceedings. With respect to the discovery order, Husband represented to the court that he did not find the checking account registers until about three weeks before trial, making it impossible to obey the court's discovery order. The trial court sanctioned Husband by excluding the evidence. No further sanction is warranted.

Wife also seeks dismissal of this appeal based upon Husband's numerous violations of appellate rules and procedures. Husband violated the California Rules of

10

Court by failing to include the most basic documents in his appendix, such as the judgment and the notice of appeal. (Cal. Rules of Court, rule 8.124(b)(1)(A), (B).) We acknowledge a self-represented litigant's understanding of the rules on appeal is, as a practical matter, more limited than an experienced appellate attorney's. Whenever possible, we do not strictly apply technical rules of procedure in a manner that deprives litigants of a hearing. When, however, that apparent lack of understanding results in our inability to conduct a meaningful review of the trial court's decision, we cannot ignore the fundamental rules of appellate practice. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985; *Nwosu v. Uba*, *supra*, 122 Cal.App.4th at p. 1247.) Husband's numerous rule violations are significant, but we do not deny him the right to a hearing. Husband, however, has forfeited issues where the rule violations prevent our meaningful review.

2. *The Trial Court Did Not Abuse its Discretion in Denying the Continuance*

Husband appears to contend that because the trial court made an accommodation to alter the order of proof and set a later date to permit him to call his expert witness, the court also should have continued the trial to permit him to use the newly discovered checking account registers. Husband did not seek a continuance based on the newly discovered checking account registers.

The trial court's denial of a request for a continuance lies within its discretion. (*Lazarus v. Titmus* (1998) 64 Cal.App.4th 1242, 1249.) " 'An abuse of discretion occurs "where, considering all the relevant circumstances, the court has exceeded the bounds of reason or it can fairly be said that no judge would reasonably make the same order under the same circumstances." ' " (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 898-899, quoting *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 7.)

All parties must generally regard the date set for trial as certain, and continuances of trials are disfavored. The trial court may grant a continuance only on an affirmative showing of good cause. (Cal. Rules of Court, rule 3.1332(a), (c).) Among the circumstances that may indicate good cause is a "party's excused inability to obtain essential testimony, documents, or other material evidence despite diligent efforts." (Cal. Rules of Court, rule 3.1332(c)(6).)

11

Here, there was no showing of good cause. The declaration in support of the continuance refers to the two-year-old discovery dispute, not that Husband had discovered some of the missing checking account registers, or that Husband needed additional time to resolve the discovery dispute by engaging the services of a discovery referee. Under these circumstances, the trial court's denial of a continuance did not exceed the bounds of reason. (*In re Marriage of Olson*, *supra*, 14 Cal.App.4th at p. 7.)

3. *The Trial Court Did Not Abuse its Discretion in its Evidentiary Rulings*

Husband contends the trial court committed prejudicial error when it excluded from evidence his compilations (Exhibits 414-416). Husband maintains that had these compilations been introduced into evidence, he would have met his burden of proof to trace his separate property. This is pure speculation and not supported by the record.

The trial court's order excluding Husband's compilations (and any use of the newly discovered checking account registers) was an evidentiary sanction for discovery abuse. The trial court has broad discretion in determining whether to impose sanctions. (*R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal.App.4th 486, 496.) The trial court's determination is reversible only for an abuse of discretion. (*Ibid*.) While Husband contends that the trial court's evidentiary sanction impaired his ability to trace his separate property, our focus is whether the imposition of this sanction was an abuse of discretion. On this record, we find no abuse of discretion.

Under the Code of Civil Procedure, sanctions for a particular misuse of the discovery process are available upon notice and hearing to establish the disobedience of an order to compel. There are exceptions, however, where the discovery misuse comes so late that an evidentiary sanction is "virtually the only viable option available" to ensure a fair trial. (*Pate v. Channel Lumber Co.*, *supra*, 51 Cal.App.4th at pp. 1454-1455.)

Exclusion of Husband's compilations (Exhibits 414-416), along with the newly discovered checking account registers, was necessary to ensure a fair trial. Wife did not learn that Husband had obtained the missing checking account registers until after she almost had presented her entire case. Wife's expert prepared reports and testified

12

regarding the existing universe of documents, which contained significant gaps in the couples' financial history. Husband "ambushed" Wife at trial by attempting to fill the gaps with newly discovered financial documents that were not made available to Wife or her expert. The only effective way to remedy Husband's discovery abuse was to impose an evidentiary sanction.

In the event of trial court error, Husband has not shown prejudice. (Cal. Const., art. VI, § 13; see also Evid. Code, § 354.) Husband was not precluded from using other available financial documents to trace his separate property interest. These financial documents, however, were in disarray and incomplete. Husband relied on his memory to patch together the couple's financial history. As a CPA, Husband was at fault for the poor record keeping. Husband also incorrectly assumes that the checking account registers would have conclusively established that the real property at issue here was his separate property. The excluded compilations (Exhibits 414-416), however, only included information from the checking account registers and were not supported by account statements, canceled checks, documents regarding the identity of expenses, and proof of separate property account balances on the date that each mortgage payment was made. And, even if the compilations (Exhibits 414-416) and newly discovered checking account registers had been admitted at trial, they were incomplete because several years were still missing. Thus, it is not reasonably probable that a result more favorable to Husband would have been reached absent any perceived trial court error.

4. *The Trial Court Did Not Abuse its Discretion in Awarding Attorney's Fees*

Husband does not challenge Wife's right to recover attorney fees, only the amounted awarded. Husband claims the award of $385,502 was "outrageous" and unreasonable, pointing out excessive spending on trial exhibits, unnecessary expert witness costs, and unnecessary questioning during trial that delayed the proceedings.

"[A] motion for attorney fees and costs in a dissolution proceeding is left to the sound discretion of the trial court. [Citations.] In the absence of a clear showing of abuse, its determination will not be disturbed on appeal. [Citations.] '[T]he trial court's order will be overturned only if, considering all the evidence viewed most favorably in

13

support of its order, no judge could reasonably make the order made.' " (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768-769.) The trial court's broad discretion is guided by statute. Family Code section 2032 permits an award of attorney fees and costs if it is "just and reasonable under the relative circumstances of the respective parties." (Fam. Code, § 2032, subd. (a).) In determining what is just and reasonable, "the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately . . . ." (Fam. Code, § 2032, subd. (b).) The court considers, to the extent relevant, the circumstances that it would consider in determining spousal support. (Fam. Code, §§ 2032, subd. (b), 4320.)

" 'The major factors to be considered by a court in fixing a reasonable attorney's fee [include] "the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded [citation]; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed. [Citations.]" [Citations.]' [Citation.]" (*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 870.) The record reflects consideration of these issues.

The trial court fixed a reasonable attorney fee. Contrary to Husband's contention that no records exist, the record on appeal that Wife prepared includes billing statements detailing attorney fees incurred during the course of five years of litigation. As the court stated, the protracted litigation was a result of Husband's intentional delay in resolving this case "in a concerted effort to shut out Petitioner from a fair resolution of their marital property and support issues after a long-term marriage." The court also noted that Husband's litigation conduct warranted attorney fees as a sanction under Family Code section 271. Considering the record, the court's findings on the additional factors enunciated in *In re Marriage of Keech*, *supra*, 75 Cal.App.4th 860, along with the court's knowledge having presided over the trial in this case, we conclude the trial court did not abuse its discretion.

14

5. *The Trial Court Had Authority to Appoint an Expert*

Husband appears to contend that the trial court should not have reserved jurisdiction over certain bank accounts that he maintained were his separate property. The trial court concluded these accounts were "mixed account[s]," containing both community estate and separate property assets. Because the court required additional tracing evidence, it appointed a forensic accountant.

Under Evidence Code section 730, trial courts regularly appoint experts to investigate and prepare reports concerning marriage dissolution matters. (See *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 545.) To the extent Husband challenges the trial court's determination of the community estate's interest, he has forfeited the issue by failing to present reasoned argument and citations to legal authority. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546.)

6. *Husband has Forfeited his Remaining Challenges to the Second Partial Judgment*

Without reasoned argument and citations to authority, Husband refers to errors in the second partial judgment, including the court's directive to execute interspousal transfer deeds for the IKC Property and the Texas Property, and to reimburse Wife for her portion of the 2005 federal income tax refund. Husband also notes the second partial judgment miscalculated his separate property interest in the 25th Street Property. These issues are forfeited.

Husband has not provided an adequate record for our proper consideration of his contentions regarding the court's directives in the second partial judgment. The record contains a minute order stating that Husband objected to the proposed judgment, but the objections are not in the record. We cannot assume the errors in the second partial judgment now before us were actually raised in the trial court. Thus, Husband has forfeited any claim of error. (*Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1406.)

With respect to the 25th Street Property calculation, Husband also has failed to provide an adequate record. The trial court noted that before signing the judgment it had interlineated the proportionate separate property and community estate interest in the proceeds from the sale of the 25th Street Property and recalculated using the *Moore-*

15

*Marsden* formula.  The court retained jurisdiction over the modified calculation for "60 days should either party wish to submit further or additional calculations."  There is no indication that Husband asked the court to reconsider the calculation that he now claims as error.  Thus, the issue has been forfeited.  (*Mundy v. Lenc*, *supra*, 203 Cal.App.4th at p. 1406.)

DISPOSITION

The judgment is affirmed.  Wife shall recover costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




ALDRICH, J.

We concur:




CROSKEY, Acting P. J.




KITCHING, J.


17