[No. G006509. Fourth Dist., Div. Three. June 30, 1988.]

THOMAS A. GIONIS, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
AISSA WAYNE GIONIS, Real Party in Interest.

**COUNSEL**

Wood, Lucksinger & Epstein, George James Stephan, Mitchell B. Ludwig and Albert M. Graham, Jr., for Petitioner.

No appearance for Respondent.

E. Robert Lemkin for Real Party in Interest.

**OPINION**

WALLIN, J.—Thomas A. Gionis seeks a writ of mandate compelling the superior court to vacate its order denying his motion to bifurcate the issue of his marital status from all other issues. He claims the trial court abused its discretion by denying his motion as untimely. We agree with petitioner and issue the writ.

Aissa and Thomas Gionis were married on February 14, 1986. In June 1987 Aissa filed a petition for legal separation and a separate petition for dissolution of marriage. Both petitions requested sole custody of the parties' infant daughter as well as child and spousal support.

Thomas responded and filed a motion to change venue. The declarations supporting and opposing the motion revealed deep bitterness between the parties over the issue of child custody. The parties then stipulated to proceed with the petition for dissolution of marriage, and agreed that the court acquired jurisdiction over both parties for that purpose in June 1987.

On January 29, 1988, Thomas moved to bifurcate the issue of marital status from the issues of custody, support and property division. His declaration stated the marriage had irrevocably failed, reconciliation was not possible and although the trial of the dissolution would be brief, the remaining issues would require discovery and a more lengthy trial. He further stated he wanted his marital status resolved so he could make investments and obtain credit without having to seek quitclaim deeds from Aissa or worry that a lender might rely on community rather than separate credit. Aissa's opposition to the motion raised procedural objections; she set forth no substantive reasons why bifurcation would be against her interests.

The court denied the motion, stating there was no compelling reason to bifurcate since the petition had been on file less than a year. "I don't really find a good cause stated for proceeding after only about seven months since

the filing. . . . [¶] I'll tell you one I granted. They had been separated for a couple of years, and the wife had two babies, on her husband's health insurance policy; and he was not the father of either one of them. And I thought that was good cause. And I granted that." Additionally, the judge apparently felt the parties should be required to undergo a period of sexual restraint before being permitted to dissolve their marriage. He stated twice: "Tell them to take a cold shower." Thomas filed this petition for a writ of mandate, contending the trial court abused its discretion by refusing to bifurcate the action.

Separating the termination of a marriage from controversies over spousal support, child custody and division of marital property is not a new idea. In *Hull* v. *Superior Court* (1960) 54 Cal.2d 139 [5 Cal.Rptr. 1, 352 P.2d 161], the Supreme Court explained the concept of "divisible divorce" as follows: "Severance of a personal relationship which the law has found to be unworkable and, as a result, injurious to the public welfare is not dependent upon final settlement of property disputes. Society will be little concerned if the parties engage in property litigation of however long duration; it will be much concerned if two people are forced to remain legally bound to one another when this status can do nothing but engender additional bitterness and unhappiness." (*Id.,* at pp. 147-148.)

This philosophy was incorporated into the Family Law Act (Civ. Code, § 4000 et seq., operative Jan. 1, 1970) which removed the issue of marital fault from domestic relations litigation. (*In re Marriage of Fink* (1976) 54 Cal.App.3d 357 [126 Cal.Rptr. 626].) "[T]he new Family Law Act embodied a legislative intent that the dissolution of marriage should not be postponed merely because issues relating to property, support, attorney fees or child custody were unready for decision." (*Id.,* at p. 363.) Complying with that legislative intent, courts have encouraged bifurcation of marital status from other issues. (*In re Marriage of Wolfe* (1985) 173 Cal.App.3d 889 [219 Cal.Rptr. 337]; *In re Marriage of Lusk* (1978) 86 Cal.App.3d 228 [150 Cal.Rptr. 63]; *In re Marriage of Van Sickle* (1977) 68 Cal.App.3d 728 [137 Cal.Rptr. 568]; *In re Marriage of Fink, supra,* 54 Cal.App.3d 357.)

■ In light of the policies favoring bifurcation, the trial court was mistaken in its apparent belief that Thomas was required to justify his request with a compelling showing of need. Two previous cases in which the granting of a bifurcation motion was contested upheld the order based on declarations strikingly similar to Thomas's. In *In re Marriage of Fink, supra,* 54 Cal.App.3d 357, the husband's declaration stated "that reconciliation was not possible, that the dissolution hearing would be brief, and that the other issues (ascertainment and division of community property, spousal support and attorney fees) would require a long trial preceded by extensive discov-

ery." (*Id.,* at pp. 359-360.) And in *In re Marriage of Lusk, supra,* 86 Cal.App.3d 228, the husband's declaration "averred that he had no intention of reconciling with wife, that he believed it was in the best interest of all parties that the marriage be dissolved without further delay 'so that all parties may develop a new life with a reasonable degree of stability and certainty' and with the hope that 'immediate dissolution of the marriage will remove a great deal of emotional strain and pressure' from both husband and wife and 'may help facilitate a settlement regarding the other reserved issues.'" (*Id.,* at p. 231.)

In his declaration Thomas maintained reconciliation was impossible and the issues other than status would require a lengthy trial. He continued with extensive personal reasons why he wanted his brief marriage to Aissa dissolved quickly.[1] Absent a showing by Aissa why bifurcation should not be granted, Thomas's declaration provided a proper basis for the motion.

Aissa does not claim bifurcation would prejudice her in any way; she merely raises procedural objections. First, she claims Thomas failed to comply with Orange County Superior Court Rules, rule 710 J, requiring a motion to bifurcate marital status be supported by "[a] factual showing as to (1) the reason for delay in proceeding to trial on all issues, and (2) [the] reason for need for early resolution of status . . . . The reason for failure to file an At-issue [*sic*] Memorandum shall also be explained in the declaration if no such At-Issue Memorandum has been filed." Aissa also claims Thomas's declaration lacks his statements of personal knowledge and competency to testify, and contains inadmissible evidence, all in violation of Orange County Superior Court Rules, rule 514. Aissa argues the court denied Thomas's motion because of these defects and it was within the court's discretion to do so.

We need not decide whether the court could have denied the motion because of these procedural defects; the record reveals it did not. The court

---

[1] Thomas's declaration states in part: "I do not want the status of my marriage to effect [*sic*] any investments I wish to make. As examples, I should not be required to seek a quitclaim deed from Petitioner if I decide to invest in real property or other business ventures, nor should I be required to obtain Petitioner's consent to make application for and sign any loan documents regarding my finances. I should not have to run the risk that any business deals I decide to make are construed to be community property because community credit rather than my own separate credit was utilized. With a bifurcation, I can receive more favorable tax treatment (lower tax rates) in the filing of a separate return as an unmarried person as distinguished from filing a separate return as a married person. The greater the net cash flow I have after taxes, the greater my ability will be to support my family. [¶] I should not be constrained in my financial or social endeavors by the fact that Petitioner and I were married for only approximately a year. [¶] In addition to the foregoing, the dissolution of my marriage to Petitioner is a condition precedent to my obtaining clearance from the archdiocese to remarry, should I chose [*sic*] to do so."

gave no indication it found the declaration unacceptable or refused to consider any of its contents. Rather, it clearly stated the showing made was insufficient. "This is a hotly contested matter, obviously. Obviously, there is [*sic*] a lot of emotions involved here. But there's no reason stated in the affidavit why I should grant the motion."[2]

Thomas's declaration contained sufficient reasons supporting his motion to bifurcate, and the trial court abused its discretion by refusing to grant it. Consistent with the legislative policy favoring no fault dissolution of marriage, only slight evidence is necessary to obtain bifurcation and resolution of marital status. On the other hand, a spouse opposing bifurcation must present compelling reasons for denial.

Since the issue presented is one of law and the opposing parties have received due notice, the issuance of a peremptory writ in the first instance is appropriate. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178-179 [203 Cal.Rptr. 626, 681 P.2d 893].) Therefore, let a peremptory writ of mandate issue directing the Orange County Superior Court to vacate its order denying the motion to bifurcate the issue of marital status from all other issues and to enter a new order granting bifurcation and dissolving the parties' marital status.

Scoville, P. J., and Crosby, J., concurred.

---

[2] At this juncture, we are compelled to remind the trial court that its own views on the advisability of sexual abstinence and delay in remarriage are not part of the Family Law Act and accordingly should not influence its judgment.