Filed 1/10/14  Marriage of Jones CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of KIMBERLY M. and FLETCHER JONES, JR. <br><br> KIMBERLY M. JONES, <br><br>    Appellant, <br><br>       v. <br><br> FLETCHER JONES, JR., <br><br>    Respondent. | G047724 <br><br> (Super. Ct. No. 12D000041) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Ronald P. Kreber, Judge.  Affirmed.

Kolodny & Anteau, Stephen A. Kolodny, Heidi L. Madzar; Steven E. Briggs for Appellant.

Seastrom & Seastrom, Philip G. Seastrom; Wasser Cooperman & Carter, Bruce Evan Cooperman; Greines, Martin, Stein & Richland, Robert A. Olson and Marc J. Poster for Respondent.

\*          \*          \*

Kimberly M. Jones filed a petition for dissolution of her 13-year marriage to Fletcher Jones, Jr. Fletcher[1] filed a response in which he agreed irreconcilable differences existed. Later that year, he moved to bifurcate the trial on the status of the marriage from the remaining issues. Kimberly opposed the motion, arguing the motion should be denied because Fletcher did not comply with the preliminary disclosure requirements of Family Code[2] section 2337, subdivision (b). In the alternative, Kimberly submitted approximately 30 conditions she contended should to be attached to bifurcation. On November 29, 2012, the court granted bifurcation and issued a judgment terminating the status of the marriage. It attached approximately 16 conditions to its judgment. Kimberly appealed and contends the trial court abused its discretion in concluding Fletcher's financial disclosures met section 2337, subdivision (b)'s requirements, and in granting bifurcation without additional conditions. We affirm.

I

FACTS

Kimberly and Fletcher were married in July 1998, and separated in November 2011. They have three minor children. Kimberly filed for dissolution of their marriage in early January 2012 alleging irreconcilable differences. Fletcher's response agreed there were irreconcilable differences. In June 2012, Fletcher filed a motion to bifurcate the trial of the marital status from the remaining issues, including the division of property, child and spousal support, and attorney fees and costs. He stated a number of reasons for seeking bifurcation, including the possible detrimental effect continuation of the marriage might have on any future investments he may make prior to a final resolution of the remaining issues, that he wanted to move on with his life, and he desired

---

[1] We refer to the parties by their first names for ease of reading and to avoid confusion.

[2] All undesignated statutory references are to the Family Code unless otherwise stated.

to remarry.  His application for bifurcation included a request for six statutory conditions to be attached to the court granting his request.  (See § 2337, subd. (c).)

About the same time he filed his motion for bifurcation, Fletcher served his preliminary declaration of disclosure.  (§ 2337, subd. (b).)  The declaration exceeded 90 pages and listed assets and liabilities, partnerships and other interests, investments, and included an expense and income statement.  The preliminary declaration listed more than 25 pieces of real property in which one or both of the parties had an interest.  These properties are located in California, Nevada, Hawaii, Idaho, Illinois, and Mexico.  It also listed Fletcher's car dealerships, a number of checking and savings accounts, credit union accounts, boats, stocks, bonds or mutual funds, accounts receivable and unsecured notes, and more than three pages of interests in partnerships or other business interests, including interests in trusts.  Without going into a great deal of detail, it appears Kimberly's attorney was correct when he said Fletcher is worth possibly hundreds of millions of dollars.

Kimberly opposed bifurcation, arguing Fletcher's preliminary declaration of disclosure did not comply with section 2337.  In the alternative, she requested the court impose 31 conditions to bifurcation.  The court granted bifurcation with approximately 16 conditions.  The details of the conditions imposed and those denied are set forth in the discussion, below.  In rejecting Kimberly's contention that Fletcher's preliminary declaration of disclosure did not comply with section 2337, the court found the declaration had been augmented to meet statutory requirements.  Kimberly appealed.

II

DISCUSSION

The Legislature intends "'that the dissolution of marriage should not be postponed merely because issues relating to property, support, attorney fees or child custody [are] unready for decision.' [Citation.]" (*Gionis v. Superior Court* (1988) 202 Cal.App.3d 786, 788.)  "Severance of a personal relationship which the law has found to

3

be unworkable and, as a result, injurious to the public welfare is not dependent upon final settlement of property disputes. Society will be little concerned if the parties engage in property litigation of however long duration; it will be much concerned if two people are forced to remain legally bound to one another when this status can do nothing but engender additional bitterness and unhappiness." (*Hull v. Superior Court* (1960) 54 Cal.2d 139, 147-148.) "Consistent with the legislative policy favoring no fault dissolution of marriage, only slight evidence is necessary to obtain bifurcation and resolution of marital status. On the other hand, a spouse opposing bifurcation must present compelling reasons for denial." (*Gionis v. Superior Court*, *supra*, 202 Cal.App.3d at p. 790.)

A decision dissolving the marital status is reviewed under the substantial evidence standard. (*DeYoung v. DeYoung* (1946) 27 Cal.2d 521, 526.) Substantial evidence supported the trial court's decision. Kimberly's verified petition alleged irreconcilable differences and Fletcher's declaration concurred in the presence of irreconcilable differences. (§ 2333.) No valid purpose would have been served by requiring the parties to stay married.

*The Preliminary Declaration of Disclosure*

Section 2337 authorizes the trial court to "sever and grant an early and separate trial on the issue of the dissolution of the status of the marriage apart from other issues." (§ 2337, subd. (a).) Prior to granting bifurcation, the moving party must serve with its notice of motion "[a] preliminary declaration of disclosure with a completed schedule of assets and debts." (§ 2337, subd. (b).) A preliminary declaration of disclosure is signed under penalty of perjury (§ 2104, subd. (a)) and must "set forth with sufficient particularity, that a person of reasonable and ordinary intelligence can ascertain, . . . : [¶] (1) The identity of all assets in which the declarant has or may have an interest and all liabilities for which the declarant is or may be liable, regardless of the

4

characterization of the asset or liability as community, quasi-community, or separate. [¶] (2) The declarant's percentage of ownership in each asset and percentage of obligation for each liability where property is not solely owned by one or both of the parties. The preliminary declaration may also set forth the declarant's characterization of each asset or liability." (§ 2104, subd. (c)(1),(2).)

Kimberly argues the trial court abused its discretion in concluding Fletcher's preliminary declaration of disclosure met section 2337's requirements. She does not, however, contend the termination of the marital status should be set aside. (See *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 336 [failure to require preliminary declaration of disclosure is not jurisdictional].) Rather, she contends the matter should be remanded, Fletcher ordered to supply the missing information—the current values of listed assets and the amounts of the debts—and that she be provided an opportunity to seek additional conditions to the bifurcation once full disclosure has been made.

Whatever the relative merit of Fletcher's original preliminary declaration of disclosure, the court found the declaration had been augmented to meet the requirements of section 2337. Because Kimberly did not include the augmented information in the record on appeal, we are unable to conclude the trial court erred in finding Fletcher's preliminary declaration of disclosure, as augmented, met the statutory requirements. "It is the burden of appellant to provide an accurate record on appeal to demonstrate error. Failure to do so precludes an adequate review and results in affirmance of the trial court's determination." (*Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1.) This result is required because the trial court's judgment is presumed correct (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564) and the appellant bears the burden of establishing prejudicial error (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1213). Kimberly has not carried her burden. Accordingly, we find the trial court did not err in finding Fletcher's preliminary declaration of disclosure sufficient.

5

*Conditions on Granting Bifurcation*

Section 2337 lists a variety of conditions a court may impose in connection with an order bifurcating the trial of the marital status from the remaining issues. (§ 2337, subd. (c).) The trial court attached six statutory conditions to bifurcation. Specifically, Fletcher was required to: indemnify Kimberly for any taxes, reassessments, interest, and penalties imposed in connection with division of the community estate based on the parties not being married at the time of the division (§ 2337, subd. (c)(1)); maintain health insurance on Kimberly and the children pending resolution of all other issues (§ 2337, subd. (c)(2)); reimburse Kimberly from adverse consequences should the termination of the marriage adversely affect Kimberly's ability to probate homestead the residence in which she resided at the time the marriage was terminated (§ 2337, subd. (c)(3)); indemnify and hold Kimberly harmless from any adverse consequences should the bifurcation result in a loss of her right to a probate family allowance prior to judgment being entered on the remaining issues (§ 2337, subd. (c)(4); and indemnify Kimberly if the early termination of the marriage results in a loss of retirement, survivor, deferred compensation benefits (§ 2337, subd. (c)(5)) or social security benefits (§ 2337, subd. (c)(6).) Additionally, the court ordered Fletcher to indemnify and hold Kimberly harmless from any tax liabilities should she not be able to claim "'a stepped up' basis" on any property held by the parties at the time their marital status is terminated; pay Kimberly's health insurance for three years after final resolution of all other issues; indemnify Kimberly for any loss of rights she might suffer under Probate Code sections 100 through 104, and 120, as a result of his death and the early termination of the marriage; agree that any obligation imposed by the judgment terminating the marital relationship may be enforced against his estate in the event he dies after entry of that judgment; maintain the status quo on all life insurance policies pending final resolution of all remaining issues; agree Kimberly is entitled to attorney fees and costs incurred by her in an effort to enforce the provisions of the judgment in the event he breaches his

obligations; agree the court reserves jurisdiction to award Kimberly damages from Fletcher's community or separate property for any breach of the judgment prior to judgment being entered on all remaining issues, and in the event of his death, from his estate; inform Kimberly, prior to entering into escrow, of the purchase of any real property before entry of judgment on all remaining issues; abide by standard family law restraining orders in effect and that he is prohibited from encumbering, selling, or transferring any property pending judgment on the remaining issues; not to move to reduce spousal support payable to Kimberly if the ground for the modification is based on new expenses based upon his remarriage; and agree that the court maintains jurisdiction over all other issues of the marriage.

Kimberly contends the trial court erred in not adding a number of conditions she had proposed. She claims "[m]ost of the requested conditions are designed to protect [her] interests with respect to *the property division issues* which have yet to be resolved." (Boldface omitted.) Her trepidation is that Fletcher would remarry, creating a new community with concomitant evidentiary privileges in the new spouse which could then be used to frustrate Kimberly's discovery efforts. To that end, she asserts the trial court should have required that prior to Fletcher obtaining a marriage license, he must submit to her: 1) a written waiver from his intended spouse of her right to assert privileges under Evidence Code sections 970, 971, and 980 in further proceedings in the pending action, and that Fletcher consent to the new spouse being joined in the pending action in superior court; 2) a written waiver from his intended spouse of her right to claim any privilege in regard to Fletcher's financial affairs, including any separate or joint income tax returns they file subsequent to their marriage; and 3) a written waiver from his intended spouse of her right to asset any privileges under the California Constitution regarding privacy in Fletcher's financial affairs and transactions subsequent to their marriage. Additionally, Kimberly sought a condition prohibiting Fletcher, in the event of remarriage, from asserting any privacy interest on

7

behalf of himself or his new wife in connection with business or financial matters. She also proposed that in the event the court was not inclined to require a spousal waiver privilege, she should be provided an opportunity to depose the intended new wife prior to any marriage. Lastly, she urged the trial court to require Fletcher to post a $10 million certificate of deposit in the financial institution of her choosing as security for the proposed indemnity provisions.

We review the trial court's decision attaching conditions to the early termination of the marital relationship for an abuse of discretion. (*Gionis v. Superior Court*, *supra*, 202 Cal.App.3d at p. 790.) Aside from a trial court making a decision without consideration of the appropriate law and facts (see *People v. Downey* (2000) 82 Cal.App.4th 899, 912), an abuse of discretion exists only when the "decision is so irrational or arbitrary that no reasonable person could agree with it" (*People v. Carmony* (2004) 33 Cal.4th 367, 377). In other words, an appellate court will not find an abuse of discretion unless no judge could reasonably have made the same order. (*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866.) Thus, the question is whether given the extensive conditions the court placed on bifurcation, as well as the effect of Evidence Code section 972, subdivision (g), the court abused its discretion in refusing to include Kimberly's additional proposed conditions. Using the applicable standard of review, we find no abuse of discretion.

First, Kimberly made no showing the rejected conditions were necessary to protect her interests. She argues they are necessary because the early termination of the marital status "may impact upon property division issues" and Fletcher's remarriage would establish "new evidentiary privileges and areas of confidentiality which could be used to block [a] party in Kimberly's position from obtaining full disclosure and discovery of information . . . the disclosure of which . . . constitutes a significant part of

8

Fletcher's continuing fiduciary obligations to Kimberly."[3]  The same can be said in every situation wherein the court bifurcates the trial, resulting in termination of the marital status prior to resolution of other issues.  Aside from the fact that Kimberly failed to demonstrate the necessity of these conditions, the Legislature has set forth a number of specific conditions courts may impose in granting bifurcation.  (§ 2337, subd. (c).)  Those requested by Kimberly are not among them.  Granted, the court may also impose any other condition it finds to be "just and equitable" (§ 2337, subd. (c)(10)), but the fact that the Legislature has specifically set forth at least nine other permissible conditions and did not include any of those sought by Kimberly, which again could apply in all cases, tends to indicate the Legislature would not consider them "just and equitable" absent a showing distinguishing a particular case from every other case involving bifurcation.

Additionally, Evidence Code section 972 weighs against the requests concerning evidentiary privileges.  Subdivision (g) of Evidence Code section 972 provides the marital privilege does not exist in "[a] proceeding brought against the spouse by a former spouse *so long as the property and debts of the marriage have not been adjudicated*, or in order to establish, modify, or enforce a child, family or spousal support obligation arising from the marriage to the former spouse; in a proceeding brought against a spouse by the other parent in order to establish, modify, or enforce a child support obligation for a child of a nonmarital relationship of the spouse; or in a proceeding brought against a spouse by the guardian of a child of that spouse in order to establish, modify, or enforce a child support obligation of the spouse.  The married person does not have a privilege under this subdivision to refuse to provide information relating to the issues of income, expenses, assets, debts, and employment of either

---

[3]  Kimberly asks that we take judicial notice (Evid. Code, § 452, subd. (d)) of the petition for dissolution of marriage Fletcher filed and the response filed by the woman he married subsequent to the court terminating the marital status of Fletcher and Kimberly.  That there was a subsequent marriage and premarital agreement does not tend to indicate the trial court erred in the present case.  We therefore deny the request.

9

spouse, but may assert the privilege as otherwise provided in this article if other information is requested by the former spouse, guardian, or other parent of the child." (Italics added.) In this regard, it is noteworthy that Kimberly did not dispute the representation of Fletcher's attorney in the trial court to the effect that Kimberly and Fletcher are party to three martial agreements making virtually all of Fletcher's property his separate property. Neither did she assert the agreements were unlawful. Thus, at the time the court decided on appropriate conditions for bifurcation, division of the extensive assets did not appear to be an overly complex issue. Indeed, if by virtue of the agreements between the parties the vast majority of the property is deemed to be Fletcher's separate property, Kimberly's need for the proposed conditions may in fact be *less* compelling than one would expect in the majority of bifurcation cases.

This same fact—that the vast majority of the extensive holdings are presumably Fletcher's separate property—militates against requiring him to post a $10 million deposit as a condition of bifurcation, the money to be used to assure indemnification required by other conditions. Our requirement that Fletcher post a $10 million bond as a condition of our lifting the automatic stay of the termination of the marital status triggered by Kimberly's appeal (Code Civ. Proc., § 923) does not mean, contrary to Kimberly's assertion, the trial court should have required Fletcher to post the same amount as a condition of bifurcation. Unlike Kimberly's request of the trial court, the bond we required was not for the purpose of assuring Fletcher's compliance with the terms of conditions imposed on the bifurcation. Instead, our bond was to indemnify Kimberly in the event our lifting the automatic stay at Fletcher's request caused her any harm during the appellate process. Moreover, the bond we ordered did not require Fletcher to deposit $10 million in a financial institution, as did Kimberly's proposed condition.

For the same reasons stated above, neither did the court err in denying Kimberly's request to include the following conditions: 1) that section 721 would

10

continue to govern the conduct of the parties pending final resolution of all remaining issues; 2) that Fletcher must honor his fiduciary duties to Kimberly pending final resolution of all remaining issues; and 3) that until judgment on all the remaining issues, the parties will continue to be considered spouses under sections 1100 through 1103.  In addition, whether added as an express condition or not, both parties have a continuing duty fiduciary duty to each other (§ 1100, subd. (e) [fiduciary duty remains "until such time as the assets and liabilities have been divided by the parties or by a court"]) and sections 1100 through 1103 sufficiently protect Kimberly's interests.  For example, the remedy provided in subdivision (g) of section 1101 for a breach of the fiduciary duty includes, but is not limited to, "an award to the other spouse of 50 percent, or an amount equal to 50 percent, of any asset undisclosed or transferred in breach of the fiduciary duty plus attorney's fees and court costs."

Kimberly has not demonstrated the court abused its discretion in not adding the above conditions to bifurcation.  Consequently, we affirm.

III

DISPOSITION

The judgment is affirmed.  Fletcher shall recover his costs on appeal.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.


11