Filed 4/30/21  Marriage of Saltzman CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of STEPHEN SALTZMAN and RANDY SCHIENBERG SALTZMAN. | B302819 |
| ———————————————— STEPHEN SALTZMAN, | (Los Angeles County Super. Ct. No. 17STFL08376) |
| Respondent, | |
| v. | |
| RANDY SCHIENBERG SALTZMAN, | |
| Appellant. | |

APPEAL from a status judgment and orders of the Superior Court of Los Angeles County.  Anne K. Richardson, Judge. Affirmed.

Law Offices of Vicki J. Greene and Vicki J. Greene for Appellant.

Feinberg Mindel Brandt & Klein and Gregory A. Girvan for Respondent.

————————————————

This appeal arises from the trial court's status judgment dissolving the parties' marriage and bifurcating all remaining issues for late adjudication. Appellant wife contends that the trial court erred because its orders issued in conjunction with the termination of marriage adversely impact her health insurance coverage and do not adequately protect her interest in community property retirement accounts. Finding no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Stephen Saltzman (Husband) and Randy Schienberg Saltzman (Wife) married on August 17, 1991. They have a 17-year-old daughter and an adult son. On December 14, 2017, Husband filed a petition for dissolution of marriage based on irreconcilable differences, contending that the parties had separated in September 2016. Wife responded to the petition on February 20, 2018, also citing irreconcilable differences and requesting divorce, and they exchanged preliminary declarations of disclosure. Wife's response stated "TBD" for the parties' date of separation.

At the time he filed for divorce, Husband was a long-term partner at the law firm Loeb & Loeb LLP (Loeb). While at Loeb, he contributed to three Loeb-affiliated retirement accounts and took part in Loeb's group health insurance plan, which covered both parties and their children. He transitioned to the law firm Paul Hastings in February 2018 and began taking part in the Paul Hastings insurance plan, again covering both parties and their children.

On August 23, 2018, Husband filed a request for order to bifurcate and terminate marital status. On October 12, 2018, Wife filed an opposition, opposing Husband's request to bifurcate

2

marital status, or in the alternative, asking for 17 conditions to be imposed in connection with termination of marital status. On November 13, 2018, Husband joined his Loeb retirement plans to the action.

After a March 2019 consolidated hearing on the request to bifurcate and other requests for orders, the trial court entered its operative Findings and Order After Hearing on September 17, 2019, granting bifurcation, among other things, and stating its intention to terminate marital status subject to express conditions protecting Wife's health insurance and retirement plan survivor benefits and other express conditions.[1]

Regarding health insurance, the trial court ordered:

"Pursuant to Family Code section 2337(c)(2): Until judgment has been entered on all remaining issues and has become final, [Husband] shall maintain all existing health and medical insurance coverage for the [Wife] and any minor children as named dependents, so long as the [Husband] is eligible to do so. If at any time during the period the [Husband] is not eligible

---

[1] The trial court entered a previous Findings and Order After Hearing on June 21, 2019, but amended and replaced it with the operative order on its own motion, over Wife's objections on unrelated grounds. This was within the trial court's inherent authority to modify, amend, or revoke its prior interim orders. (See *Schachter v. Citigroup, Inc.* (2005) 126 Cal.App.4th 726, 737–739 [court has "inherent power to correct its own rulings"]; cf. *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1313 & fn. 9 [trial court may reconsider its own interim or final orders; for final orders "the issue whether a trial court can reconsider an appealable order on its own motion after the time to appeal from that order has expired" is undecided].)

to maintain the existing coverage, the [Husband] shall, at the [Husband's] sole expense, provide and maintain COBRA health and medical insurance coverage to the extent it is available. To the extent COBRA coverage is not available, the [Husband] shall be responsible to pay for the health and medical care for the [Wife] to the extent that care would have been covered by the existing insurance coverage but for the dissolution of marital status, and shall otherwise indemnify and hold the other party harmless from any adverse consequences resulting from the loss or reduction of the existing coverage. For purposes of this subdivision, 'health and medical insurance coverage' is the coverage for which the parties are eligible under [Husband's] Paul Hastings group medical plan."

As for retirement accounts, the trial court ordered the parties to ensure Wife's survivor benefits in the retirement plans were protected through an interim order, as discussed in greater detail below.

On October 16, 2019, Husband filed a new request for order to enter a status judgment consistent with the Findings and Order After Hearing issued September 17, 2019. Husband attached a proposed judgment, consisting of Judicial Council Forms FL-180 (Judgment), FL-347 (Bifurcation of Status of Marriage or Domestic Partnership), and FL-348 (Pension Benefits—Attachment to Judgment).

Wife opposed the proposed judgment and request for order, and after briefing the matter came on for hearing on December 6, 2019. The trial court concluded that the form of the proposed judgment was appropriate and accurately reflected the order after hearing, rejected Wife's arguments that the orders on

4

health insurance and retirement plan survivor benefits were improper, and entered the proposed judgment.

This appeal followed.

## DISCUSSION

### I. Standard of Review

At its core, Wife's argument is that the trial court's bifurcation order and status judgment dissolving the parties' marriage was in error because her health insurance coverage and entitlement to community retirement assets were not optimally protected. These are all issues which the trial court has discretion to determine. "[A] motion to bifurcate and separately adjudicate the issue of dissolution of the marriage is addressed to the judicial discretion of the court" (*In re Marriage of Lusk* (1978) 86 Cal.App.3d 228, 235), as are a trial court's orders valuing and dividing community property (*In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 309).

A trial court "has not abused its discretion as long as its decision 'is within the range of options available under governing legal criteria in light of the evidence before the tribunal.' " (*In re Marriage of Taschen* (2005) 134 Cal.App.4th 681, 691.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Ibid.*)

### II. Relevant Legal Principles

Family Code section 2337 provides that "[i]n a proceeding for dissolution of marriage, the court, upon noticed motion, may sever and grant an early and separate trial on the issue of the dissolution of the status of the marriage apart from other issues."

5

(Fam. Code, § 2337, subd. (a).)[2]  The trial court may separately try the issue of termination of marriage if doing so "is likely to simplify the determination of the other issues."  (Cal. Rules of Court, rule 5.390(b)(7).)

Public policy favors bifurcation of trial on pivotal issues in a dissolution action.  (*In re Marriage of Macfarlane & Lang* (1992) 8 Cal.App.4th 247, 257; see *In re Marriage of Wolfe* (1985) 173 Cal.App.3d 889, 893–894 ["To the extent bifurcation of issues such as custody, support or the division of community property can assist the parties to achieve settlement of remaining issues, it should be encouraged"].)  For the issue of marital status, "[c]onsistent with the legislative policy favoring no fault dissolution of marriage, only slight evidence is necessary to obtain bifurcation and resolution of marital status.  On the other hand, a spouse opposing bifurcation must present compelling reasons for denial."  (*Gionis v. Superior Court* (1988) 202 Cal.App.3d 786, 790.)

The minimum statutory requirements for bifurcating and terminating marital status are that six months must have passed since the date of service of the summons and petition (§ 2339, subd. (a)), and that the party seeking termination of marital status must have served a preliminary declaration of disclosure or obtained a written agreement to defer service to a later date (§ 2337, subd. (b)).  Both requirements were met here.

Additionally, "[t]he party not requesting termination of status may ask the court:  [¶]  (A) To order that the judgment granting a dissolution include conditions that preserve his or her claims in retirement benefit plans, health insurance, and other

---

[2] Subsequent undesignated statutory references are to the Family Code.

6

assets; and [¶] (B) For other orders made as conditions to terminating the parties' marital status or domestic partnership." (Cal. Rules of Court, rule 5.390(d)(2).)  Section 2337, subdivision (c) sets out various discretionary conditions a trial court "may impose upon a party" until final judgment has been entered, including maintenance of the same or comparable health insurance coverage, protection of spousal interests in retirement assets, and "[a]ny other condition the court determines is just and equitable."  (§ 2337, subd. (c)(2), (5), (9)(B) & (E), (10).)

Specifically, with regard to health insurance, a trial court may require that "the party shall maintain all existing health and medical insurance coverage for the other party and any minor children as named dependents, so long as the party is eligible to do so.  If at any time during this period the party is not eligible to maintain that coverage, the party shall, at the party's sole expense, provide and maintain health and medical insurance coverage that is comparable to the existing health and medical insurance coverage to the extent it is available," or pay for care to the extent it would have been covered but for dissolution, if comparable coverage is not available.  (§ 2337, subd. (c)(2).)

With regard to retirement assets, the trial court may require that the party requesting bifurcation "shall indemnify and hold the other party harmless from any adverse consequences to the other party if the bifurcation results in the loss of the other party's rights with respect to any retirement, survivor, or deferred compensation benefits under any plan, fund, or arrangement, or to any elections or options associated therewith, to the extent that the other party would have been entitled to those benefits or elections as the spouse or surviving spouse of the party."  (§ 2337, subd. (c)(5).)  The trial court also

7

"may order a specific security interest designed to reduce or eliminate the likelihood that a postmortem enforcement proceeding would be ineffective or unduly burdensome to the surviving party," including "[a]n order to provide a security interest by Qualified Domestic Relations Order from that party's share of a retirement plan or plans" or "an interim order requiring the party to pay or cause to be paid, and to post adequate security for the payment of, any survivor benefit that would have been payable to the other party on the death of the party but for the judgment granting a dissolution of the status of the marriage, pending entry of judgment on all remaining issues."  (*Id.*, subd. (c)(9)(B) & (E).)

Section 2337, subdivision (d), further requires that "[p]rior to, or simultaneously with, entry of judgment granting dissolution of the status of the marriage," the trial court must join the party's retirement or pension plan.  (*Id.*, subd. (d)(1).)  And "[t]o preserve the claims of each spouse in all retirement plan benefits upon entry of judgment granting a dissolution of the status of the marriage," the trial court must enter one of the following orders prior to or simultaneously with entry of judgment:

(A) An order pursuant to section 2610 disposing of each party's interest in retirement plan benefits, including survivor and death benefits; or

(B) An interim order preserving the nonemployee party's right to retirement plan benefits, including survivor and death benefits, pending entry of judgment on all remaining issues; or

(C) An attachment to the judgment granting a dissolution of the status of the marriage which contains specific language required to be included by section 2337, subdivision (d)(1)(C).  As

8

indicated *post* in part IV at pages 13–14, the judgment attached Form FL-348, which includes this language, which specifically tracked the language required.

### III. The Trial Court's Health Insurance Order Was Not an Abuse of Discretion

Wife contends that the trial court's termination of marital status and health insurance order improperly "prematurely impose[s] COBRA benefits" onto her, effectively shortening the total period of time during which she would be assured health insurance benefits as Husband's spouse or former spouse.[3] She also contends that the trial court failed to check the correct box on Form FL-347 regarding health insurance.

We find no abuse of discretion. The trial court expressly ordered that Husband would maintain for Wife (1) "all existing health and medical insurance coverage so long as the [Husband] is eligible to do so"; (2) "COBRA health and medical insurance coverage to the extent it is available" if he becomes ineligible to maintain the existing coverage; and (3) "[t]o the extent COBRA coverage is not available," payment for her health and medical care "to the extent that care would have been covered by the existing insurance coverage but for the dissolution of marital status, and shall otherwise indemnify and hold the other party

---

[3] COBRA is an acronym for the Consolidated Omnibus Budget Reconciliation Act of 1985. (See 29 U.S.C. § 1161 et seq.) COBRA gives eligible individuals, who lose coverage under a group plan, the option of paying premiums to maintain coverage for a limited period of time. The California Continuation Benefits Replacement Act or "Cal–COBRA" (Health & Saf. Code, § 1366.20 et seq.) provides temporary continuation coverage for individuals who are ineligible for federal COBRA benefits.

harmless from any adverse consequences resulting from the loss or reduction of the existing coverage."

Wife's health insurance coverage is thus effectively fully protected until entry of final judgment on all remaining issues. Even if her COBRA benefits begin and expire during that period of time, until entry of final judgment her medical care still must be paid for by Husband to the full extent of the existing coverage. This is consistent with the full scope of the discretionary protective health insurance order contemplated by section 2337, subdivision (c)(2).

It is true that COBRA benefits attach only for a limited period of time after an employee or covered party becomes ineligible for group plan coverage, so the longer Wife stays legally married the longer she may have specific entitlement to continued coverage under the existing plan, if COBRA commences on dissolution of marriage. However, that the clock on Wife's continuation coverage under COBRA may begin ticking upon dissolution is not a legal barrier to termination of marital status; Wife provides no support for this proposition. The trial court considered Wife's objections and request for an order for Husband to maintain Wife as a beneficiary on his existing health policy without initiating COBRA (although no evidence was offered that this option was available postdissolution), and concluded that her concerns did not justify delaying bifurcation and termination of marital status any further. The trial court explained, "[A]s I see it they have complied with the Rules of Court and with the [Code of Civil Procedure] and it does appear that after a year and three months, bifurcation of status which is supposed to be freely given as long as all of the requirements are given are accomplished, is supposed to be freely granted." We

10

likewise conclude that, given the policies in favor of bifurcation and no-fault termination of marriage, the trial court did not abuse its discretion by deciding that Wife's COBRA-related concerns were not a compelling reason to delay bifurcation and termination of marital status.

With regard to Form FL-347, Wife's concerns are not material. Form FL-347 contains preprinted selections that mirror the discretionary conditions listed in section 2337, subdivision (c). Wife contends that the court was obligated to check box 5.b. on Form FL-347 related to health insurance, which provides that the party requesting bifurcation must "provide and maintain health and medical insurance coverage that is comparable to the existing health and medical insurance coverage to the extent it is available" for the other party and minor children; provide comparable coverage at his own expense if not eligible to maintain existing coverage; or pay for medical care to the extent it would have been covered by the existing policy.

Rather than using box 5.b. of the Form FL-347, the Form FL-347 prepared by Husband and adopted by the trial court directs the reader to language inserted in section 5.j., "which reflects the precise terms of the September 17, 2019 Order After Hearing." This language merely duplicates the language of the trial court's order after hearing with regard to health insurance:

"[Husband] shall maintain all existing health and medical insurance coverage for the [Wife] and any minor children as named dependents, so long as the [Husband] is eligible to do so. If at any time during the period the [Husband] is not eligible to maintain the existing coverage, the [Husband] shall, at the [Husband's] sole expense, provide and maintain COBRA health

11

and medical insurance coverage to the extent it is available. To the extent COBRA coverage is not available, the [Husband] shall be responsible to pay for the health and medical care for the [Wife] to the extent that care would have been covered by the existing insurance coverage but for the dissolution of marital status, and shall otherwise indemnify and hold the other party harmless from any adverse consequences resulting from the loss or reduction of the existing coverage. For purposes of this subdivision, 'health and medical insurance coverage' is the coverage for which the parties are eligible under [Husband's] Paul Hastings group medical plan."

These provisions effectuate the intent of the trial court and do not deviate from those in box 5.b. of the Form FL-347 in any substantive way.

## IV. The Trial Court's Interim Order Regarding Husband's Retirement Accounts Was Not an Abuse of Discretion

Wife contends that the trial court erred by not entering an interim qualified domestic relations order (interim QDRO) modeled after a sample she provided to Husband. Instead, after ordering that an interim order be prepared to protect her community retirement plan benefits, the trial court adopted Husband's proposed use of Judicial Council Form FL-348 as its interim order, in conjunction with Form FL-347. The trial court expressly considered Wife's objections to the use of Form FL-348, and rejected them, concluding that there was no substantive difference between what she was asking for and the protections the Judicial Council forms provided.

We find no error. In its order after hearing, the trial court specifically ordered: "Pursuant to Family Code section

12

2337(c)(9)(E): [Husband] and [Wife] shall ensure that all community property plans are subject to an enforceable court order for the payment of spousal survivor benefits to the [Wife] through an appropriate interim order requiring any survivor benefit that would have been payable to the [Wife] on the death of the [Husband] but for the judgment granting a dissolution of the status of the marriage, pending entry of judgment on all remaining issues, to be paid to the [Wife]."

Form FL-348 accomplishes this purpose. It "serves as a temporary qualified domestic relations order" (Cal. Rules of Court, rule 5.390(d)(4)) and tracks the language of section 2337, subdivision (d)(2)(C), with preprinted language stating:

"Each party identified above is provisionally awarded without prejudice, and subject to adjustments by a later domestic relations order, a separate interest equal to one-half of all benefits accrued or to be accrued under any retirement plan in which one party has accrued a benefit, including but not limited to the plans listed below, as a result of employment of the other party during the marriage or domestic partnership and before the date of separation. In addition, pending further notice, the plan must, as allowed by law, or as allowed by the terms of the plan in the case of a governmental plan, continue to treat the parties as married persons or domestic partners for purposes of any survivor rights or benefits available under the plan to the extent necessary to provide for payment to the surviving spouse or domestic partner of an amount equal to that separate interest or of all of the survivor benefits if at the time of death of the participant there is no other eligible recipient of the survivor benefit."

13

This language in Form FL-348 substantively ensures Wife's entitlement to one-half of the community interest in Husband's retirement plans, and requires that Wife be paid any survivor rights or benefits that would have been payable to her on the death of the Husband but for dissolution of the status of the marriage, as the trial court required in its order after hearing. Wife provides no support for her contention that the language of Form FL-348 might somehow permit a future spouse of Husband's to assert eligibility to Wife's protected separate interest and survivor benefits. We therefore conclude it was an "appropriate interim order" pursuant to the trial court's specifications.

A former spouse's entitlement to retirement survivor benefits may be unprotected in a situation where the trial court made no order preserving the former spouse's interest before the employee spouse subsequently remarried and died. (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 836 ["where the plan participant dies or retires before the former spouse secures an order awarding that spouse any interest in the pension plan, a domestic relations order entered before the plan participant's death that does not award the former spouse an interest in the participant's pension plan but simply 'reserves jurisdiction' over the plan provides an inadequate basis for entry nunc pro tunc of either a QDRO or of an order determining the former spouse's interest in the pension plan that later may be qualified as a QDRO"].) However, that is not the case here, as Form FL-348 expressly awards Wife a provisional separate interest in the plans and continued survivor benefits equal to the extent of that interest (or for all of the survivor benefits if there is no other eligible recipient).

14

In addition, the Form FL-347 prepared by Husband and adopted by the trial court contains added language which "reflects the precise terms of the September 17, 2019 Order After Hearing." As with the health insurance issue, it essentially duplicates the language of the trial court's order after hearing with regard to retirement benefits: "Pursuant to Family Code 2337(c)(9)(E): [Husband] and [Wife] shall ensure that all community property retirement plans are subject to an enforceable court order for the payment of spousal survivor benefits to the [Wife] through an appropriate interim order requiring any survivor benefit that would have been payable to the [Wife] on the death of the [Husband] but for the judgment granting a dissolution of the status of the marriage, pending entry of judgment on all remaining issues, to be paid to the [Wife]."

As Wife concedes, the trial court had a choice of alternatives to protect her retirement survivor benefit rights pending entry of judgment on all remaining issues. (See Hogoboom and King, Cal. Practice Guide: Family Law (The Rutter Group 2020) ¶ 5:126 ["In lieu of an interim QDRO, the optional Judicial Council form FL-348 . . . will serve as a provisional order on pension benefits—in effect, a temporary QDRO—and can be attached to a status only dissolution judgment"]; see also *id.* at ¶ 11:484:8 [same].)

We conclude that the trial court's adoption of Form FL-348, entered concurrently with entry of judgment and Form FL-347, was within the range of available legal options for an interim order, effectuated the intent of the trial court's operative order after hearing, and sufficiently ensured that Wife's interest in community property retirement plans, including survivor

15

benefits, was preserved upon termination of marital status. That the trial court did not elect Wife's preferred interim QDRO format is not an abuse of discretion.

## DISPOSITION

The trial court's status judgment and orders are affirmed. Stephen Saltzman shall recover his costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

16